UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRANDON GREEN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DAVID LIEBAL, )<br>M. LINCOLN, )<br>)<br>Defendants. ) | No. 2:20-cv-00540-JRS-MJD |

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Brandon Green is an Indiana inmate currently incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"). He brings this action alleging that the Defendants violated the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, by denying his application for a religious diet. Defendants David Liebel and Michele Lincoln[1] have moved for summary judgment. Dkt. 21. For the reasons explained below, the motion is **granted in part and denied in part**.

### I.
### Standard of Review

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving

---

[1] When he filed his complaint, Mr. Green identified the defendants as "David Liebal" and "M. Lincoln." The **clerk is directed** to update the docket to reflect the proper spelling of Defendants' names.

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

In this case, Defendants have met that burden through their unopposed motion for summary judgment. Mr. Green failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); see S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). However, "[e]ven where a non-movant fails to respond

to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). Here, Mr. Green has not responded to the summary judgment motion, so the Court treats Defendants' supported factual assertions as uncontested. *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020); S.D. Ind. L.R. 56-1(b), (f).

At all relevant times, Mr. Green was incarcerated at Wabash Valley. Dkt. 12 at 1. Defendant Liebel was and is employed as the Director of Religious Services for the Indiana Department of Correction ("IDOC"). *Id.* Defendant Michele Lincoln was and is the Programs Director for the IDOC. *Id.*

The IDOC maintains a policy governing the development and delivery of religious services. Dkt. 20-7. Under the policy, inmates may "request and receive, when feasible, a Personal Preference Diet for religious purposes." *Id.* at 26. In addition, under the policy, an inmate requesting a religious diet must "specify his/her moral or religious reasons in writing to the Chaplain for approval or denial." *Id.*

On March 23, 2020, Mr. Green applied for a religious diet. Dkt. 20-1. The application explains that the IDOC currently offers vegan (no animal products), lacto-ovo vegetarian (may contain eggs and/or dairy products) and traditional kosher (one that has been certified as such by rabbinic or other recognized Jewish authority and that complies with traditional Jewish requirements concerning food preparation and foods that are allowed to be eaten) religious diet

3

options. *Id.* at 1. The application states that, if an inmate is seeking any diet other than a vegan or lacto-ovo diet, he must "specify on the . . . form the foods and or preparation methods that you believe are required or prohibited to satisfy your sincere religious beliefs and requirements and why." *Id.* In addition, it states that the IDOC may review an inmate's "commissary, Fresh Favorites and other purchases" for the 60-day period before the inmate submits the application. *Id.* Mr. Green signed an acknowledgement that he had read and agreed to the terms of the application. *Id.* On the application, Mr. Green identified his religious preference as "Muslim/Islam" and explained his dietary needs by saying, "I'm a Muslim and my food is to be prayed over and it must be halal kosher is the closest thing to a halal meal." *Id.* at 2 (errors in original).

On August 10, 2020, Mr. Liebel denied Mr. Green's application, writing:

Your application for a kosher diet has been received and reviewed. Your religious preference, history of commissary and other purchases in the 60 days prior to application and any other information you provided was considered. Based upon the available information, your request is denied.

Reasons for denial include:

You did not address what is halal, and what you believe is haram regarding other offered diets.

If you wish to grieve this decision through the offender grievance system you may do so. You will need to follow through to the Grievance Appeal level which will bring the issue to Central Office.

You may submit a new application for a kosher diet in 90 days.

Dkt. 20-2.

Mr. Green grieved the decision. Dkt. 20-4 at 3. In his grievance, he provided more detail about his dietary needs. For example, he stated:

I'm a Sunni Muslim . . . . Halal is the things and acts permitted by Allah. One who does so will be rewarded by Allah; and one who does not do so will be punished by Allah . . . . I am protected under the . . . law to be a Muslim an eat a religious diet and the only religious diet I.D.O.C. provides is "kosher." Allah says a Muslim should not eat the flesh of any animal which is forbidden by Allah, or the flesh of

4

> an animal that has died a natural death or the flesh of an animal which has been slaughtered by a non-believer. The People of the Book (a Christian or a Jew) is halal for Muslim as long as the food is cook-n-slaughtered in the name of Allah. David Liebel said I order non-kosher food. I have not ordered commissary since last October . . . . I'm force to eat haram food (all that is no halal); the acts and things the doing of which is forbidden by Allah. The diet I'm provid is haram it is non-clean not prepared in the name of Allah there for not halal so I'm forbidden to eat it.

*Id.* (errors in original). Ms. Lincoln denied the grievance on September 21, 2020, stating:

> Central Office denied your religious preference diet because of the history of commissary and other purchases in the 60 days prior to your application and any other information you provided was considered.[2] You also did not address what is hala[l], and what you believe is haram regarding other offered diets.

*Id.* at 1.

Mr. Green filed a second-level appeal. Dkt. 20-5. That appeal was denied on October 9, 2020, by a non-party. *Id.*

### III.
### Discussion

In this case, Mr. Green pursues claims for damages and injunctive relief under the First Amendment and RLUIPA. Dkt. 1. RLUIPA does not authorize any kind of relief against public employees in their individual capacities. *Nelson v. Miller,* 570 F.3d 868, 889 (7th Cir. 2009), *abrogation on other grounds recognized by Jones v. Carter*, 915 F.3d 1147 (7th Cir. 2019); *see also Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011). Thus, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(2), the RLUIPA claims against Mr. Liebel and Ms. Lincoln are necessarily official-capacity claims, which amount to claims against their employer—the IDOC.

---

[2] Defendants do not address this point, but the statement about denying Mr. Green's application because of commissary purchases appears to be an error because Mr. Liebel did not deny Mr. Green's application because of commissary purchases, and the record includes no evidence suggesting that Mr. Green made commissary purchases inconsistent with his religious beliefs in the 60-day period before he filed this application. Defendants submitted evidence showing that Mr. Green purchased non-kosher ramen in October 2019, *see* dkt. 20-3 at 3, but that was well outside the 60-day window preceding his March 2020 application.

5

And RLUIPA did not unambiguously waive sovereign immunity to suits for money damages. *Sossamon v. Texas*, 563 U.S. 277, 285–86 (2011). Because the IDOC is an agency of the State of Indiana, it is entitled to sovereign immunity, *see de Lima Silva v. Dep't of Corrections*, 917 F.3d 546, 565 (7th Cir. 2019) ("immunity extends to state agencies and state officials in their official capacities"), and Mr. Green may not recover money damages under RLUIPA in this case. Thus, his RLUIPA claims are necessarily claims for injunctive relief only.

As to the First Amendment claims, the claims for money damages are necessarily individual-capacity claims, and the claims for injunctive relief are necessarily official-capacity claims. *Phillips v. Illinois Dep't of Fin. & Prof'l Regulation*, 718 F. App'x 433, 435 (7th Cir. 2018) ("If [the plaintiff] did not so specify [the capacity in which he sues the defendant], then we look at the relief that the plaintiff seeks: when the plaintiff seeks injunctive relief, then he has brought an official-capacity suit; when the plaintiff seeks damages, then his case is a personal-capacity suit. (cited authority omitted)).

Defendants contend that they are entitled to summary judgment because they did not violate Mr. Green's First Amendment rights, did not violate RLUIPA, and—regardless—they are entitled to qualified immunity. Dkt. 21. Qualified immunity extends only to suits for money damages, not to suits for injunctive relief. *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1008–09 (7th Cir. 2019). Thus, the Court first considers whether Defendants are entitled to qualified immunity as to Mr. Green's First Amendment claims for money damages. Then it proceeds to consider the merits of his claims for injunctive relief under the First Amendment and RLUIPA.

### A. Claims for Money Damages

Defendants argue that they are entitled to judgment as a matter of law based on qualified immunity. Dkt. 21 at 12. "Qualified immunity attaches when an official's conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly.* 137 S. Ct. 548, 551 (2017) (citation omitted) (internal quotation marks omitted). "[T]wo central questions must be addressed in the course of determining whether qualified immunity is available: whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (citation omitted). Once raised, the plaintiff, not the defendant, carries the burden of overcoming the affirmative defense. *Sparing*, 266 F.3d at 688 (*citing Spiegel v. Cortese*, 196 F. 3d 717 (7th Cir. 1999). In *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), the Supreme Court "held that courts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Id.* at 227 (*Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

This Court's analysis must follow the Supreme Court's rulings. In this regard, *Mullenix v. Luna,* 577 U.S. 7 (2015) is instructive. The Supreme Court explained:

> A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. ––––, ––––, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal quotation marks and alteration omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).
> "We have repeatedly told courts ... not to define clearly established law at a high level of generality." *al–Kidd, supra,* at 742, 131 S.Ct. 2074. The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Ibid.* (emphasis added). This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (*per curiam*) (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

7

*Mullenix*, 577 U.S. at 308.

Given the facts in this case, the Court concludes that Defendants have shown that they are entitled to qualified immunity as to Mr. Green's First Amendment claims for damages. To prevail on a First Amendment claim against Defendants, Mr. Green must show that Defendants "personally and unjustifiably placed a substantial burden on his religious practices." *Neely-Bey Tarik-El*, 912 F.3d at 1003 (cleaned up). A "substantial burden" is one that "puts substantial pressure on an adherent to modify his behavior and violate his beliefs." *Id.* (cleaned up). "Forcing an inmate to choose between daily nutrition and religious practice is a substantial burden." *Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016). That said, in the correctional context, even a substantial burden is "justified if it is reasonably related to a legitimate penological interest." *Neely-Bey Tarik-El*, 912 F.3d at 1003 (cleaned up).

In this case, the undisputed designated evidence shows that Defendants denied Mr. Green's application for a religious diet (subject to filing a grievance or resubmission in 90 days) at least in part because he did not provide sufficient detail about the nature of the diet he needed, including instructions on how to properly prepare the diet. Defendants assert that it was not clearly established that denying an inmate's religious diet application (subject to filing a grievance or resubmission in 90 days) for lack of specificity violated the First Amendment. Dkt. 21 at 13. Mr. Green has not countered that argument—as he was bound to do. In addition, the Court is also unaware of any previous case holding that Defendants' particular actions violated the First Amendment. Accordingly, Defendants' motion for summary judgment is **granted** as to Mr. Green's First Amendment claims for money damages.

### B. Claims for Injunctive Relief

The Court now considers Mr. Green's claims for injunctive relief, beginning with the RLUIPA claims and then proceeding to the First Amendment claims.

#### 1. *RLUIPA*

RLUIPA's protection is broader than the First Amendment. *Holt v. Hobbs*, 574 U.S. 352, 361–62 (2015). Under RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the *government demonstrates* that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a) (emphasis added). A "substantial burden" under RLUIPA is one that "seriously violates or contradicts" an inmates' religious beliefs. *Schlemm v. Wall*, 784 F.3d 362, 364 (7th Cir. 2015).

For purposes of summary judgment, Defendants assume that their denial of Mr. Green's religious diet application imposed a substantial burden on his religious exercise within the meaning of RLUIPA. Dkt. 21 at 11. They argue, however, that the denial was justified because it was in furtherance of a compelling government interest and the least-restrictive means of furthering the compelling interest. *Id.* at 11–12. Although they bear the burden to prove both the existence of a compelling governmental interest and that they used the least-restrictive means available, they offer no evidence in support of their argument. Indeed, they do not even identify the government interest alleged to be "compelling," beyond stating that the denial of Mr. Green's religious diet application was necessary to "ensure the appropriate religious diet is being identified and thus properly prepared by IDOC staff in accordance with the offender's sincerely held religious beliefs."

9

*Id.* at 11. They also simply assert that denying Mr. Green's application with leave to resubmit is "the least restrictive means." *Id.* at 12.

In making this argument, Defendants fail to acknowledge that they did not simply deny the application with leave to resubmit—instead, they told Mr. Green that he could either grieve the denial or file another application *in 90 days*. Even assuming that the denial was in furtherance of some governmental interest that is "compelling," Defendants offer no explanation of how requiring an inmate to file a grievance or wait 90 days to file a new, more specific religious diet application is "the least restrictive means" available for furthering whatever interest they have in ensuring that the proper religious diet is identified and prepared for the inmate. And, indeed, an array of obvious alternatives were available—such as asking an inmate to provide more detail when his application lacks it rather than denying the application or allowing an inmate to file a new application sooner than 90 days after the denial. In sum, Defendants have failed to show that they are entitled to judgment as a matter of law on Mr. Green's RLUIPA claims, and their motion for summary judgment is **denied** as to those claims. *See Willis v. Commissioner*, 753 F. Supp. 2d 768, 779–80, 784 (S.D. Ind. 2010) (denying defendants' motion for summary judgment as to RLUIPA claims where they failed to establish the absence of a less-restrictive alternative).

2. *First Amendment*

As explained above, to prevail on his First Amendment claims, Mr. Green must show that Defendants unjustifiably placed a substantial burden on his religious practice. *Neely-Bey Tarik-El*, 912 F.3d at 1003. In the First Amendment context, even a substantial burden is justified if it is reasonably related to a legitimate penological interest. *Id*. Defendants do not dispute that their actions burdened Mr. Green's religious practices. *See generally* dkt. 21 at 9–10.[3] Instead, they

---

[3] Arguably related to this point, Defendants do state that "Plaintiff was not prevented from praying over his food, purchasing food within his religious preference, or attending any religious services he

argue that the burden was justified because Mr. Green did not describe in detail what his diet plan requires and he could resubmit his application, stating:

> Plaintiff also stated essentially one required preparation method: "My food is to be prayed over." Because Plaintiff did not describe in detail what his diet plan requires in order to conform to his specific sincerely held religious beliefs, Defendants denied his Application in accordance with IDOC policy . . . . Plaintiff is able to re-submit his application. . . . . Due to the fact that this denial was based on Plaintiff's failure to properly follow the State Form and thus not indicating what his specific diet preference is, and there being a clear penological purpose for the denial, the Court should grant summary judgment in favor of the Defendants as a matter of law.

*Id*. at 9–10 (internal citations omitted).

Had Defendants denied Mr. Green's application for lack of detail and told him that he could file a new application right away, the Court might be inclined to agree, although it notes that Defendants have not explicitly explained what the "legitimate penological interest" was that the denial furthered and that Mr. Green provided considerably more detail about his dietary needs in his grievance beyond the claim that his food "needs to be prayed over." Regardless, Defendants did not simply allow Mr. Green to submit a new application. Instead, Mr. Liebel denied Mr. Green's application for lack of detail and told him that he either had to grieve the decision or wait 90 days to file a new application. Eleven days later, Ms. Green denied Mr. Green's grievance,

---

wanted." Dkt. 21 at 9. However, no evidence in the summary judgment record supports these factual assertions. As to the point about allowing Mr. Green to purchase food that complied with his religious preference, the Seventh Circuit has held that requiring an inmate "to choose between daily nutrition and religious practice is a substantial burden" under the First Amendment, and Defendants fail to explain how requiring Mr. Green to spend money (which he might not even have) to buy religiously compliant food is not effectively requiring him to choose between nutrition and religious practice. *See Thompson*, 809 F.3d at 380; *see also Njie v. Dorethy*, 766 F. App'x 387, 390, 392 (7th Cir. 2019) (reversing grant of summary-judgment on First Amendment claim relating to denial of religious diet, finding material issue of fact as to whether plaintiff's religious practices were substantially burdened, even though he was able to buy religiously compliant food on commissary). Finally, the fact that Mr. Green might have been able to attend religious services has nothing to do with the religious practice allegedly burdened here—his diet. Again, the Seventh Circuit has squarely held that, under the First Amendment, an inmate's religious practices are substantially burdened if he has to choose between nutrition and violating his religious belief in the necessity of a certain diet. *Thompson*, 809 F.3d at 380.

11

leaving him to either appeal her denial or wait another 79 days to file a new application. Defendants' brief is entirely silent as to why requiring Mr. Green to either appeal or wait multiple months to file a more specific request was reasonably related to whatever legitimate penological interest they might have in administering the religious-diet program. Accordingly, Defendants have failed to show that they are entitled to judgment as a matter of law on Mr. Green's First Amendment claims for injunctive relief, and their motion for summary judgment as to those claims is **denied**.

## IV.
## Conclusion

The **clerk is directed** to update the docket to reflect that the proper names of Defendants are: (1) David Liebel (currently identified as "David Liebal"); and (2) Michele Lincoln (currently identified as "M. Lincoln"). For the reasons stated above, Defendants' motion for summary judgment, dkt. [20], is **granted with respect to Mr. Green's claims for money damages and is denied as to his claims for injunctive relief.**

As the case stands, the only claims remaining are official-capacity claims for injunctive relief against Mr. Liebel and Ms. Lincoln. The real party in interest as to Mr. Green's claims for injunctive relief is the IDOC. Thus, it is not necessary for both Defendants to remain in the case, and the claims for injunctive relief against Ms. Lincoln are **dismissed as redundant**. **The clerk is directed** to terminate Michele Lincoln as a Defendant. Because Mr. Green's official-capacity claims for injunctive relief against Mr. Liebel under the First Amendment and RLUIPA remain pending in the case, final judgment will not enter at this time.

Assuming Mr. Green's claims for injunctive relief are not moot, as discussed below, they will be resolved by settlement or bench trial. *See Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 648 (7th Cir. 2002) ("If the only relief sought is equitable, such as an

12

injunction . . . , neither the party seeking that relief nor the party opposing it is entitled to a jury trial."). If Mr. Green would like the assistance of counsel for settlement or trial, he must complete and return the enclosed form motion for assistance with recruiting counsel within **30 days of the date of this Order**. If he fails to timely complete and return the form, the Court will assume that intends to proceed with this case pro se through settlement and trial, if necessary. The **clerk is directed** to enclose a form motion for assistance with recruiting counsel with Mr. Green's copy of this Order.

The Court will set a bench trial by separate entry. Defendants' summary-judgment brief did not address the propriety of injunctive relief and did not provide an update as to whether Mr. Green is currently receiving a religious diet. Accordingly, within **30 days of the date of this Order**, Defendants and Mr. Green shall each file a notice explaining whether the bench trial is necessary. Each party's notice must state: (1) whether Mr. Green is currently receiving a religious diet that comports with his sincerely held religious beliefs; and (2) if he is, why his remaining claims for injunctive relief should not be dismissed as moot.

**SO ORDERED**.

Date: 08/26/2022

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

BRANDON GREEN
190386
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Erica Lee Sawyer
INDIANA ATTORNEY GENERAL
Erica.Sawyer@atg.in.gov